IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JASON BONE                                                                                         PLAINTIFF

v.                                         No. 6:18-CV-06003

NAVISTAR, INC., et al.                                                                    DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendant American Casualty Company of Reading, PA's ("ACC") motion for summary judgment (Doc. 118), brief in support of its motion (Doc. 119), and statement of facts in support of its motion (Doc. 120). Plaintiff Jason Bone filed a response in opposition to summary judgment (Doc. 122) and a response to ACC's statement of facts (Doc. 123). ACC filed a reply (Doc. 124) and Mr. Bone filed a sur-reply (Doc. 127). For the reasons stated herein, ACC's motion (Doc. 118) will be denied.

**I.     Background**

Mr. Bone, a citizen and resident of Louisiana, was injured as a result of a vehicle collision that occurred in Clark County, Arkansas. At the time of the collision, Mr. Bone was driving a rental vehicle to conduct depositions in the course and scope of his employment with a Louisiana law firm. ACC issued a commercial and general liability policy to Mr. Bone's employer which provides automobile liability coverage for "Hired Auto and Non-Owned Auto Liability," if an employee uses such a vehicle in the course and scope of his or her employment. The policy was issued in Louisiana. Mr. Bone contends that ACC is liable for his damages to the extent they were caused by an uninsured motorist.[1]

---

[1] For purposes of summary judgment, these facts are not disputed.

## II. Legal Standard for Summary Judgment

When a party moves for summary judgment, it must establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999). In order for there to be a genuine issue of material fact, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson*, 477 U.S. at 248. "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001). Facts asserted by the nonmoving party "must be properly supported by the record," in which case those "facts and the inferences to be drawn from them [are viewed] in the light most favorable to the nonmoving party." *Id*. at 656–57.

## III. Analysis

ACC moves for summary judgment, arguing that uninsured motorist ("UM") coverage is not available to Mr. Bone under the policy because the accident occurred in Arkansas and, therefore, ACC is entitled to judgment as a matter of law.

Both parties agree that Louisiana law applies to Mr. Bone's claim against ACC. Arkansas choice-of-law principles control in this diversity case because the district court sits in Arkansas. *See Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) ("Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity

2

of citizenship."). Under Arkansas choice-of-law principles, Louisiana law applies to this case because Mr. Bone's employer was located there. *See Hoosier v. Interinsurance Exchange of the Automobile Club*, 451 S.W.3d 206, 209 (Ark. 2014) ("[W]ith respect to an automobile-insurance policy ... unless some other state has a more significant relationship to the transaction and the parties, the law of the state which the parties understood to be the principal location of the insured risk during the term of policy controls.").

Under Louisiana law, "UM coverage will be read into any automobile liability policy 'unless validly rejected.'" *Gray v. Am. Nat'l Prop. & Cas. Co.*, 977 So.2d 839, 845 (La. 2008) (citations omitted).

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles ... however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage.

La. Stat. Ann. § 22:1295(1)(a)(i). "This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." La. Stat. Ann. § 22:1295(1)(a)(iii).

Both parties agree that no UM coverage was offered or rejected in writing, and, therefore, UM coverage was implied in the policy issued to Mr. Bone's employer. Accordingly, the only question before the Court is whether Mr. Bone is entitled to UM coverage for an accident that occurred in Arkansas.

ACC argues that under Section 1295(1)(a)(iii), the mandate to provide UM coverage only applies when the accident occurs in Louisiana and involves a Louisiana resident. In making this

3

argument, ACC relies heavily on a Louisiana Court of Appeals case which states that "section l(a)(iii) plainly states that the statute's application is limited to accidents occurring 'in this state' involving a resident of this state." *Triche v. Martin*, 13 So.3d 649, 652 (La. App. 2009).

Mr. Bone argues that mandatory UM coverage under Section 1295(1)(a)(i) applies to accidents that occur outside of Louisiana. Mr. Bone relies heavily on a Fifth Circuit opinion which states that "[a]lthough the Louisiana Supreme Court has never addressed whether the UM statute is applicable only when the accident occurs within the state, we are satisfied that, if confronted with this issue, that court would reject [the] argument that Section 1295(1)(a)(iii) serves as a 'geographic limitation.'" *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 610 (5th Cir. 2014).

Based on the text and legislative history of the Louisiana UM statute, the Court finds that Mr. Bone's interpretation of the statute is correct and that he is entitled to UM coverage for the accident that occurred in Arkansas.

Because the Louisiana Supreme Court has not addressed whether the UM statute applies to out-of-state accidents, the Court must make an "*Erie* guess" on the issue. *Id.* at 607. The plain language of the Louisiana UM statute does not specify whether UM coverage applies to out-of-state accidents. However, the plain language of the statute does not limit UM coverage to *only* accidents that occur in Louisiana as suggested by ACC. Section 1295(1)(a)(iii) states that the "requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." The section does not state that the "requirement for uninsured motorist coverage shall *only* apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." Accordingly, the statute is ambiguous as to whether UM coverage applies to out-of-state accidents and the Court must look to legislative history to answer that question. *Transcontinental Gas Pipe Line Corp. v.*

4

*Transportation Ins. Co.*, 953 F.2d 985, 988-89 (5th Cir. 1992) ("But, '[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.'" (citing La. Civ. Code art. 10)).

Section 1295(1)(a)(iii) was passed to supersede the Louisiana Supreme Court's decision in *Snider v. Murray*, 461 So.2d 1051 (La. 1985), which held that the Louisiana UM statute did not apply to accidents that occurred in Louisiana if the insurance policy was issued in another state. *Champagne v. Ward*, 893 So.2d 773, 779 (La. 2005) ("We agree that [Section 1295(1)(a)(iii)] superceded *Snider* . . . to the extent that now Louisiana's UM law can be applied to foreign insurance policies in multistate cases when the accident occurs in Louisiana and involves a Louisiana resident."). Subsequent Louisiana opinions have recognized that the adoption of Section 1295(1)(a)(iii) was intended to extend the geographic scope of UM coverage. *See Nelson v. Robinson*, 10 So.3d 356, 359 (La. App. 2009) ("[T]he cases applying the amendment clearly reflect that the language . . . was intended to extend geographically the scope of UM coverage beyond cases where the policy was issued in Louisiana and the vehicle was garaged in Louisiana."). Given that Section 1295(1)(a)(iii) was intended to extend the geographic scope of UM coverage, the Fifth Circuit in *Boyett* reasonably concluded that the Louisiana Supreme Court would reject the argument, made here by ACC, that Section 1295(1)(a)(iii) serves as a "geographic limitation." *Boyett*, 741 F.3d at 610.

Additionally, a Louisiana case decided prior to the adoption of Section 1295(1)(a)(iii) held that an insured could proceed to trial on a fraud claim against his insurer based on the insurer's denial of UM coverage where the insurance policy was issued by a Louisiana insurer to a Louisiana resident, but the accident occurred in Texas. See William Shelby McKenzie & H. Alston Johnson III, 15 *La. Civil Law Treatise* § 4:4 (4th ed. 2012) ("The Louisiana UM statute is applicable to a

5

policy issued in Louisiana on an automobile registered in Louisiana even though the accident occurs in another state.") (citing *Comeaux v. Penn. Gen. Ins. Co.*, 490 So.2d 1191, 1193 (La. App.1986)). Given that Section 1295(1)(a)(iii) was intended to extend the scope of UM coverage and that Section 1295(1)(a)(iii) does not explicitly limit UM coverage to accidents that occur in Louisiana, there is no reason to believe that the Louisiana legislature intended to limit UM coverage to accidents occurring in Louisiana.

ACC argues that the Court need not consider legislative history because the Louisiana UM Statute is unambiguous. In support of this argument, ACC relies on *Triche*, 13 So.3d at 652, where the Louisiana Court of Appeals stated that "section l(a)(iii) plainly states that the statute's application is limited to accidents occurring 'in this state' involving a resident of this state." However, the court in *Triche* improperly interpreted the Louisiana UM Statute. As discussed above, the Louisiana UM statute contains no language suggesting that UM coverage applies only to accidents occurring in Louisiana. Accordingly, the Court can make an "*Erie* guess" that the Louisiana Supreme Court would not follow the holding in *Triche*.

Furthermore, *Triche* is factually distinguishable because it dealt with a policy which was not issued in Louisiana, and, as such, did not meet the requirements of Section 1295(1)(a)(i). This led the *Boyett* court to find that "[t]o the extent that [the insurer] relies on language from [*Triche*] to argue that Section 1295(1)(a)(iii) is a 'geographic limitation' such language is at best dicta." *Boyett*, 741 F.3d at 610 n.39. Regardless of whether this language is dicta, the Louisiana Supreme Court would likely decline to follow *Triche*, because the opinion improperly interpreted the Louisiana UM Statute.

Based on the text and legislative history of the Louisiana UM statute, this Court adopts the *Boyett* court's holding that "Louisiana's UM statute may apply to motor vehicle accidents that

6

occur outside of Louisiana." *Boyett*, 741 F.3d at 610. Accordingly, ACC's motion for summary judgment will be denied because Mr. Bone is entitled to UM coverage for the accident that occurred in Arkansas.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that ACC's motion for summary judgment (Doc. 118) is DENIED.

IT IS SO ORDERED this 10th day of May, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE